# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 13-37713 |
| Gregory D. Hawk, | § | |
| Marcie H. Hawk | § | |
| | § | Chapter 7 |
| Debtors. | § | |

**ENTERED**
**01/30/2015**

## MEMORANDUM OPINION REGARDING TRUSTEE'S EXPEDITED MOTION FOR TURNOVER
[Relates to Doc. Nos. 64 & 70]

The Court writes this Memorandum Opinion because it concerns an important exemption issue: does the Fifth Circuit's recent holding in *Viegelahn v. Frost (In re Frost)*, 744 F.3d 384 (5th Cir. 2014), pertaining to homestead exemptions extend to individual retirement account (IRA) exemptions? In the case at bar, the Chapter 7 trustee contends that it does; the debtors argue that it does not. This Court concludes that the principles in *Frost* logically extend to IRA exemptions.

### I.   PROCEDURAL BACKGROUND

On December 29, 2014, Eva S. Engelhart, the Chapter 7 trustee (the Trustee) for the estate of Gregory D. Hawk and Marcie H. Hawk (the Debtors) filed an expedited motion (the Motion) seeking an order under 11 U.S.C. § 542(a) compelling the Debtors to turn over the proceeds from the post-petition liquidation of their exempt IRA account. [Doc. No. 64]. In the Motion, the Trustee argues that the IRA proceeds automatically reverted to the bankruptcy estate due to the Debtors' failure to reinvest the proceeds in another exempt IRA account within 60 days as required by state law (Texas Property Code section 42.0021). [*Id.* at ¶ 8]. The Trustee relies on *Frost* and this Court's 2014 ruling, *In re Smith*, 514 B.R. 838 (Bankr. S.D. Tex. 2014).

*Frost* involved a debtor who sold an exempt homestead during the pendency of a Chapter 13 case and failed to reinvest the sale proceeds in another exempt homestead within six months as required to maintain the exemption under state law (Texas Property Code § 41.001). 744 F.3d at 385. The Fifth Circuit held that upon expiration of the six-month period, the homestead proceeds lost their protection under Texas law and became non-exempt property and therefore property of the Chapter 13 estate. *Id.* at 391. In *Smith*, this Court extended *Frost*'s holding to homesteads sold in Chapter 7 bankruptcies. 514 B.R. at 852. The Trustee now argues that the 60-day requirement for the reinvestment of IRA funds is analogous to the six-month requirement for homestead sale proceeds. [Doc. No. 64, ¶ 11].

The Debtors filed a response to the Motion on January 5, 2015 (the Response). [Doc. No. 70]. In the Response, the Debtors contend that procedural variations in their case prevent application of *Frost* and *Smith*. Specifically, the Debtors argue that the IRA proceeds are not property of the estate because they liquidated the IRA account **after** (1) the deadline for objections to exemptions; (2) the deadline for objections to discharge; and (3) the Chapter 7 Trustee had filed a report declaring no assets for distribution and proposing to abandon all non-exempt assets. [*Id.* at ¶¶ 11–13].

On January 5, 2015, this Court held a hearing on the Motion, and counsel for the parties made oral arguments. [Doc. No. 70]. The Court made oral findings and conclusions at that time and granted the Motion. The Court now memorializes its oral findings and conclusions in this Opinion.[1]

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated by Federal Rules of Bankruptcy Procedure 7052 and

---

[1] To the extent that this Court's oral findings and conclusions conflict with the Court's written findings and conclusions set forth herein, the latter shall govern. To the extent that this Court's written findings and conclusions do not encompass all of this Court's oral findings and conclusions, then the latter shall supplement the former.

9014.[2] To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II.    FINDINGS OF FACT

The relevant facts are as follows:

1. On December 15, 2013, (the Petition Date), the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[3] [Doc. No. 1].

2. On January 7, 2014, the Debtors claimed an IRA account as exempt pursuant to Texas Property Code section 42.0021. [Doc. No. 18, p. 13]. NFP Securities, Inc. managed the IRA (the NFP Account), which had a balance of $164,902 as of the Petition Date. [*Id.*].

3. On March 17, 2014, the period to object to the Debtors' discharge expired. [Doc. No. 7]. However, pursuant to an agreed order between the Trustee and the Debtors, the deadline for the Trustee, the U.S. Trustee, and RES-TX One, LLC (RES-TX One) to object to the Debtors' discharge was extended until May 17, 2014. [Doc. No. 39].

4. On March 28, 2014, after numerous extensions, the meeting of creditors was finally held. [No. 13-37713]. Accordingly, the deadline to object to the Debtors' claimed exemptions expired on April 28, 2014. [*Id.*].

5. On April 3, 2014, the Trustee filed a report declaring the case to be a "no asset" case and proposing to abandon all assets that were not already exempt (the No Asset Report). [No. 13-37713].

---

[2] Any reference to "the Rules" refers to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.
[3] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

6. On May 16, 2014, creditor Res-TX One timely filed an Adversary Proceeding, [No. 14-3191], objecting to the Debtors' discharge. [Doc. No. 46].

7. Between December 11, 2013 and July 14, 2014, the Debtors withdrew all of the funds in the NFP Account (the Liquidated IRA Funds or the Funds). [Doc. Nos. 64, ¶ 3 & 70, ¶ 1].

8. The Debtors did not reinvest, or "roll over," any of the Liquidated IRA Funds into another exempt IRA account. [Hearing of July 5, 2015 at 5:21–5:36 p.m.]. Instead, the Debtors have been using the Liquidated IRA Funds for living and other expenses. [*Id.*].

9. On November 18, 2014, counsel for creditor Res-TX One took the deposition of Gregory D. Hawk (Hawk) in connection with Adversary Proceeding No. 14-3191. [Doc. Nos. 64, ¶ 5 & 70, ¶ 3]. In response to questions about the Liquidated IRA Funds, Hawk testified that approximately $30,000 of the Liquidated IRA Funds were still in his possession and being held "in a shoebox." [Doc. Nos. 64, ¶ 5 & 70, ¶ 3]. The Trustee first learned of the Liquidated IRA Funds through this deposition. [Hearing of July 5, 2015 at 4:20 p.m.].

10. The Trustee made a demand upon the Debtors to turn over the Liquidated IRA Funds in Hawk's possession prior to filing the Motion, but the Debtors refused to do so. [Doc. Nos. 64, ¶ 6 & 70, ¶ 4].

11. The Debtors have not received a discharge due to Res-TX One's pending objection to discharge. [Doc. Nos. 64, ¶ 7 & 70, ¶ 5].

12. The main case remains open while the Trustee continues to locate and liquidate assets for distribution to creditors.

### III.   CONCLUSIONS OF LAW

#### A.  Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it affects the administration of this Chapter 7 estate. Further, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) because it involves a motion requesting turnover of property of the estate under 11 U.S.C. § 542. Finally, this dispute is core under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

#### B.  Venue

Venue is proper pursuant to 28 U.S.C. § 1408(1).

#### C.  Constitutional Authority to Enter a Final Order

In the wake of the Supreme Court's ruling in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), this Court must also evaluate whether it has the constitutional authority to enter a final order adjudicating the dispute at bar. In *Stern*, the Supreme Court held that 28 U.S.C. § 157(b)(2)(C)—which authorizes bankruptcy judges to issue final judgments in counterclaims by a debtor's estate against entities filing claims against the estate—is an unconstitutional delegation of Article III authority to bankruptcy judges where the dispute being adjudicated is based on state common law and does not affect the claims adjudication process. *Id.* at 2616.

The dispute at bar is not a counterclaim of the Debtor, nor does it concern solely state common law. Rather, the dispute at bar arises from the Trustee's filing of the Motion pursuant to

5

an express provision of the Code, § 542(a). The relief sought is entirely based upon § 542, which is unique to bankruptcy. Moreover, this dispute concerns whether the funds generated from the post-petition liquidation of the Debtors' IRA account constitute property of the estate under § 541(a), and the case law interpreting the extent of "property of the estate" comes from bankruptcy law, not state law. Accordingly, because the dispute at bar does not involve a claim based solely on state common law, but rather is based upon a provision of the Bankruptcy Code and bankruptcy case law, this Court has the constitutional authority to enter a final order pursuant to 28 U.S.C. §§ 157(a) and (b)(1).

### D. Contrary to the Debtors' Position, *Frost* and *Smith* Are Applicable to the Dispute at Bar.

The primary issue in this case is whether *Frost* and *Smith* are applicable precedent. In the Response, the Debtors argue that procedural variations in their case prevent application of *Frost* and *Smith*. The Response highlights three procedural differences—namely, that the Debtors liquidated the NFP Account after:

1) the deadline where any party in interest could object to their claimed exemptions;
2) the deadline for the Trustee to lodge any objections to discharge; and
3) the Trustee had filed the No Asset Report.

In contrast to the Debtors' position, the Court finds *Frost* and *Smith* to be directly on point. While the Response emphasizes procedural dissimilarity between the Debtors' case and *Frost* and *Smith*, the Response fails to explain its legal significance. As discussed in detail below, the Court interprets the principles set forth in *Frost* and *Smith* to hold true at any point during the pendency of a Chapter 7 case—without regard to its specific procedural posture. Thus, the Court finds that the pertinent threshold question is whether property deemed exempt under state law loses its statutory protection at any point *during* the pendency of a Chapter 7 case. Here, the Liquidated IRA Funds lost their exempt status under state law while the Debtors' bankruptcy

6

case was open. Once the Liquidated IRA Funds became non-exempt, the Funds automatically became property of the estate and the Chapter 7 Trustee was immediately entitled to them.

### a. Review of the Fifth Circuit's holding in *Viegelahn v. Frost (In re Frost)*

*In re Frost* involved a Chapter 13 debtor who claimed a homestead exemption under Texas law (Texas Property Code section 41.001). 744 F.3d at 385. The debtor timely scheduled his homestead as exempt, and no one lodged an objection. *Id.* During the pendency of his Chapter 13 case, the debtor sold the homestead and used some of the proceeds for purposes other than purchasing a new homestead. *Id.* Upon discovering this fact, the trustee challenged the debtor's exemption of those proceeds from the estate. *Id.* The trustee argued that because the debtor had failed to reinvest the proceeds in a new homestead within six months as required by the Texas homestead statute, those proceeds became non-exempt property, which in turn became part of the bankruptcy estate required to be distributed to creditors. *Id.* The debtor argued that exempted property, and proceeds from the subsequent sale thereof, are permanently exempted from the estate and cannot later be re-characterized as non-exempt property subject to garnishment or seizure by pre-petition creditors. *Id.* The bankruptcy court ruled in the trustee's favor and the district court affirmed the bankruptcy court's ruling. *Id.* at 385–86. The debtor then appealed the district court's order to the Fifth Circuit. *Id.* at 386.

In affirming the district court's ruling, the Fifth Circuit relied on the "snapshot rule" of bankruptcy law, which holds that all exemptions are determined at the time the bankruptcy petition is filed. *Id.* The court stated that a debtor may rely on either federal or state exemption law; however, "[w]hen claiming an exemption under state law, it is important to remember that 'it is the *entire* state law applicable on the filing date that is determinative.'" *Id.* at 386 (quoting *Zibman v. Town (In re Zibman)*, 268 F.3d 298, 304 (5th Cir. 2001)) (emphasis in original).

7

Applying the snapshot rule, the Fifth Circuit determined that state law, rather than federal law, governed the debtor's homestead exemption since the debtor had claimed his exemption pursuant to state law. Under the applicable Texas law, property owners who sell their exempt homestead must reinvest the proceeds in another homestead within six months. Tex. Prop. Code § 41.001(c). The Fifth Circuit explained that proceeds that are not reinvested within the six-month period lose their exempt status under Texas Property Code section 41.001(c) and are therefore no longer exempt from the bankruptcy estate. 268 F.3d at 387.

The debtor argued that the snapshot rule, together with § 522(c), require that his homestead remain permanently exempted regardless of whether he subsequently sells the homestead and regardless of whether he reinvests the proceeds in another homestead. *Id.* at 384. According to the debtor's interpretation of the snapshot rule, exemptions are fixed in character as they appear on the date of the bankruptcy filing. *Id.* at 387. The Fifth Circuit clarified that rather than freezing the exempt character of the property, the snapshot rule determines the applicable exemption statute. *Id.* Further, the Fifth Circuit was not persuaded that § 522(c), which prohibits the use of exempt property to pay a pre-petition debt, preempts Texas's limitation on exempting proceeds from the sales of homesteads. *Id.* Interpreting its prior precedent, the Fifth Circuit held that where a debtor claims an exemption under state law, state law exclusively governs the exempt status of the property. *Id.*Thus, "a change in the character of the property that eliminates an element required for the exemption voids the exemption, even if the bankruptcy proceedings have already begun." *Id.* at 388. The court further emphasized that interpreting federal bankruptcy law to exempt permanently the proceeds would violate Texas law and Fifth Circuit precedent:

> [T]he object of the proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead, not to protect the proceeds, in and of

8

themselves . . . . [O]nly during the six months following the sale of a homestead when a claimant has not acquired another homestead do claimants have *any protected rights in homestead sale proceeds.*

*Id.* at 388 (emphasis in original) (internal quotation marks removed).

Applying the Texas homestead exemption statute, the Fifth Circuit held that six months after the debtor's homestead sale, the proceeds, which the debtor failed to reinvest in a new homestead, automatically lost their exempt status and therefore immediately became property of the debtor's bankruptcy estate. *Id.* at 387. Accordingly, the Chapter 13 trustee in *Frost* was successful in her objective of forcing the debtor to turn over these proceeds to her for distribution to pre-petition creditors.

**b.  Review of this Court's holding in *Cage v. Smith* (*In re Smith*)**

In *In re Smith*, this Court extended the Fifth Circuit's reasoning in *Frost* to Chapter 7 cases. 514 B.R. at 840. Similar to *Frost*, *Smith* involved a debtor who claimed a homestead as exempt pursuant to section 41.001 of the Texas Property Code and subsequently sold the homestead without reinvesting the proceeds within six months. *Id.* at 841. Relying on *Frost*, the Chapter 7 trustee in *Smith* initiated an adversary proceeding requesting the turnover of proceeds from the post-petition sale of the debtor's homestead. *Id.*

The debtor argued that the holding in *Frost* was limited to Chapter 13 cases and was therefore inapplicable to the debtor's Chapter 7 case. *Id.* at 845. Chapter 13 has a unique provision, § 1306(a)(1), which expands the definition of "property of the estate" to include property acquired by the debtor post-petition. Chapter 7, in contrast, has no analogous provision, and thus "property of the estate" in a Chapter 7 case is limited to its definition under § 541, which includes only property in existence as of the date of the filing of the Chapter 7 petition. *See* 11 U.S.C. §§ 541(a), (a)(5) ("[A bankruptcy] estate is comprised of . . . . [a]ny interest in

9

property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition."). Because a Chapter 7 estate does not include property acquired by the debtor post-petition, the debtor reasoned that property that becomes exempt after a Chapter 7 filing cannot be property of the estate subject to the claims of pre-petition creditors. *Smith*, 514 B.R. at 845. The debtor further argued that even though the proceeds from the homestead sale became non-exempt due to the six-month rule, the proceeds only lost their exempt status *post-petition* and were therefore not property of the Chapter 7 estate. *See id.* at 391.

In addition to arguing that *Frost* was limited to Chapter 13 cases, the debtor offered two alternative arguments: (1) the debtor's receipt of his discharge prior to the sale of his homestead immunized the homestead proceeds from the six-month rule; and (2) the Chapter 7 trustee's failure to timely object to the debtor's claimed homestead exemption precluded the trustee from seeking turnover of the homestead proceeds. *Id.* at 850–51.

This Court did not find the debtor's arguments persuasive. First, the Court found no indication that the holding in *Frost* should be limited to Chapter 13 cases. *Frost*, the Court noted, never mentioned § 1306(a)(1) as the basis for its decision, but rather focused on section 41.001 of the Texas Property Code in rendering its ruling. *Id.* at 848. Further, this Court found that proceeds from a post-petition sale of a debtor's exempt homestead fell within the definition of "property of the estate" under § 541 applicable in Chapter 7 cases. *Id.* The Court explained that on the date that the debtor filed his Chapter 7 petition, the property of the debtor's bankruptcy estate included a non-exempt asset that was both prospective and contingent—namely, all proceeds from any future sale of the debtor's exempt homestead that the debtor did not use within six months of the sale to purchase a new homestead. *Id.* The Court emphasized that

10

"'[s]ection 541 is read broadly and is interpreted to include all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently specified in section 70a of the Bankruptcy Act.'" *Id.* (quoting *Equinox Oil Co. v. Antill Pipeline Constr. Co. (In re Equinox Oil Co.)*, 300 F.3d 614, 618 (5th Cir. 2002)); *see also Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (per curiam) ("'[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, derivative, is within reach of § 541.'" (quoting *In re Yonikus*, 996 F.2d 866, 869) (7th Cir. 1993)).

Second, this Court found that the debtor's receipt of his discharge prior to the sale of his homestead did not immunize the homestead proceeds from the six-month rule. *In re Smith*, 514 B.R. at 850. Instead, the Court determined that only closing of a Chapter 7 case, rather than the discharge of a Chapter 7 debtor, would immunize homestead proceeds from the six-month rule. *Id.* Once a Chapter 7 case is closed, the Court explained, any property that the trustee has not administered at the time of closing is abandoned to the debtor under § 554(c). *Id.* The Court noted that Chapter 7 cases are closed only after the trustee has determined that he or she has recovered and liquidated all non-exempt assets for distribution to creditors. *Id.* Accordingly, this Court reasoned that if the homestead proceeds reverted to the debtor before the case was administratively closed, it would run counter to the Chapter 7 policy aim for creditors to be paid as much as possible from non-exempt assets. *Id.*

Third, this Court found that the Chapter 7 trustee's failure to timely object to the debtor's claimed homestead exemption did not preclude the trustee from seeking turnover of the homestead proceeds. *Id.* at 851. The Court reasoned that it was equitable to apply the six-month rule notwithstanding the trustee's failure to lodge an objection to the claimed exemption because "such application is merely enforcing the entire exemption law passed by the Texas legislature."

11

*Id.* Further, the Court explained that imposing an objection requirement would cause a significant administrative burden:

> Moreover, as a practical matter, if this Court were to accept the Debtor's argument, then necessarily all Chapter 7 trustees—to protect themselves from being sued by creditors for negligence—would have to conditionally object to validly claimed homestead exemptions **in every case** so as to protect against the potential scenario of a debtor subsequently selling his homestead, failing to reinvest the proceeds within six months, but then refusing to turn over the sale proceeds on the grounds that the trustee did not timely object to the homestead exemption.

*Id.* (emphasis in original). The Court would not endorse such a requirement as it would be both cumbersome and burdensome on trustees and bankruptcy court dockets alike and would wreak havoc upon the bankruptcy system. *Id.*

### c.   The dispute at bar is sufficiently factually similar to *Frost* and *Smith*

The holdings in *Frost* and *Smith* are applicable to the Liquidated IRA Funds as the cases are factually analogous. Although *Frost* and *Smith* dealt specifically with Texas homestead exemption law, the principles set forth therein can be logically extended to Texas IRA exemption law. As in *Frost* and *Smith*, the Debtors here claimed an exemption under Texas law. While the debtors in *Frost* and *Smith* claimed homesteads as exempt pursuant to Texas Property Code section 41.001, the Debtors here claimed the NFP Account as exempt pursuant to Texas Property Code section 42.0021. [Findings of Fact No. 2]. Sections 41.001 and 42.0021 of the Texas Property Code are virtually identical—both contain a reinvestment or "roll over" condition to maintain the exemption. Tex. Prop. Code §§ 41.001(c) & 42.0021(c). Section 41.001 requires reinvestment of the proceeds from the sale of an exempt homestead within six months, while section 42.0021 requires reinvestment of the funds from the liquidation of an exempt IRA within 60 days. Tex. Prop. Code §§ 41.001(c) & 42.0021(c). Also similar to the debtors in *Frost* and *Smith*, the Debtors violated the reinvestment provision of the exemption statute. Just as the

debtors in *Frost* and *Smith* failed to reinvest the proceeds from their homestead sale within six months, the Debtors here failed to roll over the Liquidated IRA Funds within 60 days. [Findings of Fact Nos. 7 & 8]. Further, in all three cases, the reinvestment period expired during the pendency of the bankruptcy cases. [Findings of Fact No. 12]. Because of these pertinent factual similarities, *Frost* and *Smith* are applicable to this case. Just as the homestead proceeds in *Frost* and *Smith* lost their exempt status and became property of the estate subject to the claims of pre-petition creditors, this Court finds that the Liquidated IRA Funds have lost their exempt status and that the Debtors must therefore turn over the Funds to the Trustee for distribution to creditors.

      i.  The expiration of the deadline to object to the Debtors' claimed exemptions prior to the liquidation of the NFP Account does not preclude application of *Frost* and *Smith* and therefore does not immunize the Liquidated IRA Funds from the 60-day rule.

The Debtors ask this Court to refrain from applying the holdings in *Frost* and *Smith* because, unlike those cases, the Debtors liquidated the NFP Account after the deadline when any party in interest could object to the Debtors' claimed exemptions. Contrary to the Debtors' assertion, the debtor in *Smith* sold the exempt homestead after, rather than before, the deadline to object to claimed exemptions. Further, in *Smith*, this Court rejected the debtor's argument that the expiration of the deadline to object to exemptions precludes the application of the statutory reinvestment provision. In *Smith*, this Court explained that "application is merely enforcing the entire exemption law passed by the Texas legislature—and there is nothing inequitable or unfair about that." *In re Smith*, 514 B.R. at 851; *see also In re Frost*, 744 F.3d at 386.

In accordance with *Smith*, application of the 60-day rule here is merely applying the entire IRA exemption statute and should not turn on whether a party in interest lodged an objection to the claimed IRA exemption. In fact, the imposition of an objection condition when

applying either the Texas homestead or IRA exemption statute would violate state law. There is no objection requirement in either sections 41.001 or 42.0021. Construing an extratextual objection requirement would preclude application of the reinvestment provisions—thereby contravening the intent of the Texas legislature. As this Court emphasized in *Smith*: "'The object of the proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead, not to protect the proceeds, in and of themselves.'" *In re Smith*, 514 B.R. at 843 (quoting *England v. FDIC (In re England)*, 975 F.2d 1168, 1174–75 (5th Cir. 1992)). If this Court were to prevent application of the reinvestment provisions because no party in interest timely objected to the claimed exemptions, the ruling would not foster investment in homesteads or IRA accounts but rather would protect the proceeds in and of themselves. This Court refuses to contravene the spirit of the Texas exemption statutes so blatantly.

Additionally, it would be impractical to apply the 60-day rule only if a party in interest first lodged a timely objection to a validly claimed IRA exemption. As explained in *Smith*, accepting the objection argument would compel all Chapter 7 trustees to file conditional objections to all exemptions claimed under statutes with reinvestment provisions. These hypothetical objections would languish on the dockets of bankruptcy courts and would be both cumbersome and burdensome on trustees and clerk's offices alike.

In sum, the failure of a party in interest to lodge a timely objection to the Debtors' claimed exemptions prior to the liquidation of the NFP Account does not distinguish the case from *Frost* and *Smith* and therefore does not immunize the Liquidated IRA Funds. Further, to engraft an objection requirement onto section 42.0021 of the Texas Property Code would both contravene the spirit of the statute and cause substantial administrative burden.

ii. The expiration of the deadline to object to the Debtors' discharge prior to the liquidation of the NFP Account does not preclude application of *Frost*

14

> and *Smith* and therefore does not immunize the Liquidated IRA Funds from the 60-day rule.

The Debtor contends that the holdings in *Frost* and *Smith* are inapplicable because, unlike in those cases, the Debtors liquidated the NFP Account after the deadline for the Trustee to make any objections to the Debtors' discharge. This assertion is inaccurate. Like the Debtors here, the debtor in *Smith* sold his exempt homestead after the expiration of the deadline to object to his discharge. In fact, the debtor in *Smith* had received a formal discharge of his debts at the time of the homestead sale. Further, in *Smith*, this Court rejected the debtor's argument that his receipt of a discharge precluded the application of the homestead reinvestment provision. This Court reasoned that, regardless of whether a debtor has received a discharge, the homestead reinvestment provision remains applicable up until the closing of a Chapter 7 case—i.e. the time when any property that the trustee has not administered is abandoned, by operation of law, to the debtor. *See* 11 U.S.C. § 554(c). To allow a debtor to keep property acquired pre-petition that becomes non-exempt prior to its abandonment would undermine a principal purpose of the bankruptcy system: maximizing distribution of assets to creditors. Thus, this Court now rejects the Debtors' discharge argument for the same reason set forth in *Smith*: the Debtors liquidated the NFP Account prior to the closing of their Chapter 7 case, when all non-exempt property is deemed abandoned.

Additionally, this Court finds that the Trustee did not formally abandon the Liquidated IRA Funds prior to case closing. Along with abandonment by operation of law upon the closing of a Chapter 7 case, a trustee may formally abandon property while a case is still open through notice or motion procedures. 11 U.S.C. § 554(a); Fed. R. Bankr. P. 6007; *In re Furlong*, 660 F.3d 81, 90 (1st Cir. 2011). While some courts have held that formal abandonment of non-exempt property occurs once a trustee files a notice of intent to abandon the property with the

15

bankruptcy court, other courts have held that a formal court order must authorize the abandonment. *See, e.g., In re Balonze*, 336 B.R. 160 (Bankr. D. Conn. 2006) (ruling that a Chapter 7 trustee's formal notice of intent to abandon was clear and unequivocal where the notice listed reasons for abandonment); *cf., e.g., In re Teltronics Services, Inc.*, 39 B.R. 446 (Bankr. E.D.N.Y. 1984) (holding that as long as a bankruptcy proceeding was still open, there could be no abandonment by a trustee of any property of the estate without a formal order of the bankruptcy court authorizing such abandonment).

Here, the Trustee never filed a formal notice of intent to abandon the Liquidated IRA Funds (or any undistributed property for that matter) with this Court. [*See* No. 13-37713]. Quite the opposite: once the Trustee learned of the property, the Trustee actively sought to collect the Liquidated IRA Funds from the Debtors for distribution to creditors. [Finding of Facts No. 10]. Because the Liquidated IRA Funds have not been abandoned, either formally by the Trustee or by operation of law upon the closing of the case, the Funds remain subject to the 60-day rule.

      iii.   <u>The No Asset Report does not preclude application of *Frost* and *Smith* and therefore does not immunize the Liquidated IRA Funds from the 60-day rule.</u>

The Debtors argue that it would be inequitable to apply the 60-day rule after the Trustee filed the No Asset Report proposing to abandon all non-exempt property. This argument fails for the same reasons as the discharge argument discussed above: the Debtors' Chapter 7 case remains open and the Trustee has not formally abandoned the Liquidated IRA Funds through notice and motion procedures; therefore, the Funds remain eligible for distribution to pre-petition creditors.

A Chapter 7 trustee's report of no distribution is not equivalent to formal abandonment by the trustee. *See, e.g., In re Bucala*, 464 B.R. 626, 634 (Bankr. S.D.N.Y. 2012) ("The no asset

report is simply that—a report; it is not equivalent to abandonment."). In *In re Henderson*, for instance, a bankruptcy court in New York held that a Chapter 7 debtor's properly scheduled residential lease was not deemed abandoned even though the trustee filed a no asset report signaling that he would not administer the lease for the benefit of creditors. 245 B.R. 449, 454 (Bankr. S.D.N.Y. 2000). The court explained that abandonment would only occur at the closing of the case or earlier if the trustee formally sought a court order abandoning the lease through notice and motion procedures pursuant to Rule 6007(a)—neither of which occurred. *Id.* A bankruptcy court in Pennsylvania similarly held that a Chapter 7 trustee did not abandon all levied assets in the estate to the debtor by filing a no asset report. *In re Weisberger*, 205 B.R. 727, 729 (Bankr. M.D. Pa. 1997).

Even if, however, this Court considers the No Asset Report to constitute formal abandonment of all property not administered by the Trustee, the Liquidated IRA Funds would remain property of the estate because the Trustee cannot abandon an asset that the Trustee is unaware of. It is well established that "abandonment presupposes knowledge." *Guaranty Residential Lending, Inc. v. Homestead Mortg. Co., L.L.C.,* 463 F. Supp. 2d 651, 661 (E.D. Mich. 2006) (citing *Collier on Bankruptcy* ¶ 554.03 (15th rev. ed. 2006)). Courts agree that property cannot be abandoned if the trustee was not afforded the opportunity to make an election in the matter. Where, for example, a debtor fails to schedule an asset, the asset cannot be deemed abandoned by either a court order or case closing. *See, e.g., Jeffrey v. Desmond,* 70 F.3d 183, 186 (1st Cir. 1995) (holding that property must be formally scheduled in order to be subject to abandonment under § 554(c) and there is "no such concept of 'assumed abandonment' by the trustee"); *Chartschlaa,* 538 F.3d at 122 ("While properly scheduled estate property that has not

been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed.").

Similar to an unscheduled asset, the Trustee had no knowledge of the Liquidated IRA Funds at the time the Trustee filed the No Asset Report. [Findings of Fact Nos. 5, 7, & 9]. Had the Trustee known, prior to issuing the No Asset Report, that the Debtors had been liquidating the NFP Account since the Petition Date, [Findings of Fact No. 7], the Trustee would have had the opportunity to determine whether to pursue any portion of the Liquidated IRA Funds that the Debtors failed to reinvest timely. Because, however, the Trustee first learned of the Liquidated IRA Funds after filing the No Asset Report, [Findings of Fact Nos. 5 & 9], the Trustee could not have elected to abandon the Funds at the time the Trustee issued the No Asset Report. Thus, even if this Court construes the No Asset Report as formal abandonment of all non-exempt assets, the Liquidated IRA Funds would remain property of the estate because the Trustee was unaware of the existence of the Funds at the time that he filed the No Asset Report.

## IV.   CONCLUSION

*Frost* is a watershed ruling and should be a huge "wake up call" for the debtors' bar with respect to exemptions. In issuing this Opinion, the Court urges the debtors' bar to counsel carefully their clients about preserving their exemptions. Debtors should refrain from selling exempt assets until their case is closed; or, if they sell during the pendency of their case, they must strictly abide by applicable state law exemption provisions, as no provision in the Code or Rules will preserve the exempt status of the proceeds if they are not timely reinvested pursuant to the applicable exemption statute.

An order consistent with this Opinion will be entered on the docket.

Signed this 30th day of January, 2015.

Jeff Bohm
Chief United States Bankruptcy Judge